**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **BARBARA BALDERRAMA,** on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**MCKESSON CORPORATION,**<br><br>Defendant. | Case No. 3:26-cv-03002<br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff Barbara Balderrama ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" or "Class Members," as defined below), by and through undersigned counsel, brings this Class Action Complaint against McKesson Corporation ("McKesson" or "Defendant"). Plaintiff alleges the following based on her personal knowledge as to matters concerning herself and, as to all other matters, upon information and belief and the investigation of her counsel:

## I. <u>INTRODUCTION</u>

1. Plaintiff brings this class action against Defendant for its failure to reasonably protect and secure Plaintiff's and Class Members' highly sensitive personally identifiable information[1] ("PII") and protected health information ("PHI"), resulting in a substantial and preventable data breach (the "Data Breach" or "Breach"). Defendant's failure to implement and maintain reasonable and appropriate data security measures allowed cybercriminals to infiltrate their inadequately secured computer systems and access and steal the Private Information of Plaintiff and Class Members.

2. McKesson is a leading North American healthcare services and pharmaceutical distribution company that supplies branded, generic, specialty, biosimilar, and over-the-counter pharmaceutical products to retail pharmacies, hospitals, physician practices, health systems, and other healthcare providers. The organizations and healthcare providers served by Defendant are referred to herein as "Defendant's Clients" or "Clients."[1]

3. As a part of its business practices and to provide services, Defendant collects, stores, and maintains patients' PII and PHI, including Plaintiff's and Class Members'. Plaintiff and Class Members are current and former patients of Defendant's Clients.

4. On or about August 25, 2026, Defendant discovered that unauthorized cybercriminals had gained access to its inadequately secured computer systems and exfiltrated Private Information belonging to Plaintiff and Class Members.[2] Although Defendant has not publicly identified the threat actor responsible for the Breach, upon information and belief, the notorious cybercriminal group "ShinyHunters" has claimed responsibility for the attack.[3]

5. In communications with BleepingComputer, ShinyHunters claimed that it exfiltrated approximately one terabyte of data from Defendant between August 21 and August 25, 2026, including patient data maintained within Defendant's Snowflake environment.[4]

---

[1] *See* McKesson Corp., *Business Segments*, https://www.mckesson.com/about-us/business-segments/ (last visited Sept. 2, 2026).

[2] McKesson Corp., *Current Report (Form 8-K)* (Aug. 28, 2026), https://www.sec.gov/Archives/edgar/data/927653/000092765326000247/mck-20260825.htm

[3] Zack Whittaker, *Hackers Claim Millions of Patient Records Stolen During Data Breach at Healthcare Giant McKesson*, TechCrunch (Aug. 31, 2026), https://techcrunch.com/2026/08/31/hackers-claim-millions-of-patient-records-stolenduring-data-breach-at-healthcare-giant-mckesson/ (last visited Sept. 1, 2026).

[4] Lawrence Abrams, *McKesson Discloses Breach After ShinyHunters Claims Patient Data Theft*, BleepingComputer (Aug. 28, 2026), https://www.bleepingcomputer.com/news/security/mckesson-discloses-breach-aftershinyhunters-claims-patient-data-theft/ (last visited Sept. 1, 2026).

6. Defendant subsequently disclosed on its website that its preliminary investigation, conducted with the assistance of retained cybersecurity experts, determined that the Data Breach affected certain McKesson Clients and their patients. McKesson's Clients include major retail pharmacies, such as CVS Pharmacy and Walgreens.[5]

7. Given the nature of McKesson's healthcare and pharmaceutical operations, upon information and belief, the PII and PHI compromised in the Data Breach may include highly sensitive information such as: (i) names; (ii) addresses; (iii) dates of birth; (iv) medical information, including diagnoses, medical record numbers, prescription information, and treatment information; (v) financial information, including credit and debit card numbers, PINs, and bank account information; (vi) health insurance information; (vii) contact information; and (viii) Social Security numbers (collectively, "Private Information"). Upon information and belief, Defendant collected, received, and maintained this Private Information in connection with the healthcare and pharmaceutical services it provided to its Clients.

8. Upon information and belief, Defendant has not yet provided individual notice to the victims whose Private Information was compromised in the Data Breach. As a result, most, if not all, Class Members remain unaware that their Private Information has been compromised and that they face a significant and ongoing risk of identity theft, fraud, and other personal, social, and financial harms.

9. Plaintiff and Class Members provided their Private Information, directly or indirectly, to Defendant with the reasonable understanding and expectation that Defendant would

---

[5] *See* McKesson Corp., *Customer Cybersecurity Information Center*, https://www.mckesson.com/utility/cybersecurity/customer-cybersecurity-informationcenter/#update (last visited Sept. 1, 2026).

maintain the confidentiality and security of that information and implement adequate cybersecurity measures to protect it against unauthorized access, acquisition, and disclosure.

10. Businesses that collect, store, and maintain patients' Private Information, including Defendant, owe a duty to the individuals to whom that information pertains to implement reasonable measures to protect it against unauthorized access, acquisition, use, and disclosure. This duty arises from, among other sources, contractual obligations, statutory and common law, applicable industry standards, and representations made to Plaintiff and Class Members, as well as the foreseeable risk that inadequate security will expose sensitive Private Information to cybercriminals and cause substantial privacy, financial, and other harm.

11. In providing their Private Information directly or indirectly to Defendant, Plaintiff and Class Members reasonably expected Defendant, as a sophisticated healthcare and pharmaceutical company, to maintain the confidentiality and security of their information, use it only for legitimate business purposes, and disclose it only as authorized. Defendant failed to meet these reasonable expectations, resulting in the unauthorized access to and disclosure of Plaintiff's and Class Members' Private Information through the Breach.

12. Defendant failed to implement and maintain reasonable and adequate safeguards to protect Plaintiff's and Class Members' Private Information and failed to ensure the security of the sensitive information entrusted to it concerning its Clients and their patients.

13. Upon information and belief, Plaintiff's and Class Members' Private Information is now in the possession of cybercriminals who may exploit that information for identity theft, fraud, and other malicious purposes for years to come.

14. As a direct result of Defendant's failure to reasonably secure and protect Plaintiff's and Class Members' Private Information, cybercriminals obtained highly sensitive information

that can be used to perpetrate identity theft, fraud, and other misconduct, placing thousands of affected individuals at continuing risk of significant financial and personal harm.

15. Plaintiff and Class Members now face a continuing and heightened risk that cybercriminals will misuse their Private Information to commit identity theft, fraud, and other forms of misconduct. Even those Class Members who have not yet experienced identity theft must devote time and effort to monitoring and protecting their accounts, responding to the Data Breach, and mitigating the substantial risks created by the unauthorized disclosure of their Private Information.

16. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, damages and injuries including, among other things, actual and attempted identity theft and fraud, time and expenses incurred mitigating the effects of the Breach, an increased risk of future harm, damage to credit, diminution in the value of their Private Information, loss of privacy, and other damages described herein.

17. Plaintiff brings this action individually and on behalf of the Class to recover compensatory, punitive, and nominal damages, restitution, declaratory and injunctive relief, reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

## II. PARTIES

18. Plaintiff Barbara Balderrama is an individual domiciled in El Paso, Texas, and a current customer of CVS Pharmacy and Walgreens, both Clients of Defendant. Upon information and belief, Plaintiff Balderrama's Private Information was shared with or otherwise transmitted to Defendant by these pharmacies in connection with the fulfillment of her prescription medications, and her Private Information was subsequently compromised in the Data Breach.

19. Defendant McKesson Corporation is a Delaware corporation with its headquarters

and principal place of business located at 6555 State Highway 161, Irving, Texas 75039. Defendant's service agent is Corporation Service Company, which can be served at 211 E 7th Street, Suite 620, Austin, Texas 78701-3218.

## III. JURISDICTION AND VENUE

20. The Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are citizens of a different state that is diverse from Defendant, and (4) there are more than 100 Class Members.

21. This Court has personal jurisdiction over Defendant because its principal place of business is in Texas, and the acts and omissions giving rise to Plaintiff's claims occurred in this State.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. *Defendant's Business and Collection of Plaintiff's and Class Members' Private Information.*

23. McKesson is a major North American healthcare services and pharmaceutical distribution company that distributes branded, generic, specialty, biosimilar, and over-the-counter medications and pharmaceutical products to retail pharmacies, hospitals, physician practices,

health systems, and other healthcare providers. The entities and healthcare providers that receive services from McKesson are referred to herein as "Defendant's Clients" or "Clients." [6]

24. In the ordinary course of its business and in connection with the services it provides to its Clients, Defendant collects, receives, stores, and maintains patients' PII and PHI, including the Private Information of Plaintiff and Class Members. Plaintiff and Class Members are current or former patients of Defendant's Clients whose Private Information was entrusted to and maintained by Defendant.

25. Defendant obtains, collects, uses, and derives substantial business value from Plaintiff's and Class Members' Private Information. Defendant's possession and use of this information is integral to the services it provides to its Clients and, in turn, to the revenue generated from those services.

26. Defendant could not conduct its ordinary business operations or provide many of its services without collecting, maintaining, and processing Private Information that it knew or should have known was highly sensitive and confidential.

27. Upon information and belief, Defendant represented and promised to its Clients, and indirectly to Plaintiff and Class Members, that the Private Information entrusted to it would be maintained securely and confidentially and protected against unauthorized access and disclosure.

28. Plaintiff and Class Members, as current or former patients of Defendant's Clients, paid for healthcare services that involved Defendant's services, either directly or indirectly. Defendant's obligation to provide reasonable data security was an integral component of those

---

[6] *See* McKesson Corp., *Business Segments*, https://www.mckesson.com/about-us/business-segments/ (last visited Sept. 2, 2026).

services, and a portion of the amounts paid for such services was reasonably attributable to the protection and security of patients' Private Information.

29. By obtaining, collecting, maintaining, using, and deriving a business benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties to safeguard that information and knew or should have known that it was responsible for protecting it against unauthorized access, acquisition, use, and disclosure.

30. Defendant expressly acknowledged its obligations to safeguard the Private Information entrusted to it. In its Privacy Notice, Defendant represented: "We protect the information we collect with proper physical, electronic and administrative safeguards. We only allow our employees, contractors, and agents to access personal information if they need access to perform services on our behalf. They are also subject to confidentiality obligations." [7]

31. Defendant's Privacy Notice demonstrates its recognition that it possessed sensitive and confidential information requiring appropriate protection. Notwithstanding these representations, Defendant failed to implement and maintain adequate security measures sufficient to protect Plaintiff's and Class Members' Private Information against unauthorized access, acquisition, and disclosure.

32. Plaintiff and Class Members reasonably relied upon Defendant's representations and assurances that their Private Information would be appropriately secured and protected, as Defendant intended and reasonably expected.

33. Plaintiff and Class Members provided their Private Information, directly or indirectly, with the reasonable expectation and mutual understanding that Defendant would honor

[7] *See* McKesson Corp., *Privacy Notice*, https://www.mckesson.com/utility/privacy-notice/#otnotice-section-6f49b250-760c45c5-ab88-29b5cae65954 (last visited Sept. 2, 2026).

its obligations and representations concerning the confidentiality and security of that information and protect it from unauthorized access and disclosure.

34. Upon information and belief, Defendant failed to implement and maintain reasonable and appropriate data security practices, procedures, and safeguards, including adequate administrative, physical, and technical controls necessary to protect Plaintiff's and Class Members' Private Information.

35. By collecting, maintaining, and using Plaintiff's and Class Members' Private Information in furtherance of its business and for its financial benefit, Defendant assumed a continuing duty to employ reasonable measures to safeguard that information from unauthorized access and disclosure, including by appropriately auditing, monitoring, and evaluating the security and integrity of the systems in which the Private Information was maintained.

**B. *Defendant's Massive and Preventable Data Breach.***

36. On or about August 25, 2026, Defendant discovered that unauthorized cybercriminals gained access to Defendant's inadequately protected computer system and extracted Plaintiff's and the Class Member's Private Information stored thereon.9 Upon information and belief, Defendant has not disclosed publicly what threat actor was involved, but the notorious cybercriminal group ShinyHunters has claimed responsibility for the Breach. [8]

37. Given that McKesson is a healthcare and pharmaceutical business, upon information and belief, the types of PII and PHI stolen in the Data Breach may include highly sensitive information such as: (i) names; (ii) addresses; (iii) dates of birth; (iv) medical information (e.g., diagnoses, medical record numbers, prescriptions, and/or treatment information); (v)

[8] Zack Whittaker, *Hackers Claim Millions of Patient Records Stolen During Data Breach at Healthcare Giant McKesson*, TechCrunch (Aug. 31, 2026), https://techcrunch.com/2026/08/31/hackers-claim-millions-of-patient-records-stolen-during-data-breach-at-healthcare-giant-mckesson/ (last visited Sept. 2, 2026).

financial information (e.g., credit/debit card numbers, pin numbers, and/or bank account information); (vi) medical insurance information; (vii) contact information; and (viii) Social Security numbers (collectively, "Private Information"). Upon information and belief, Defendant collected and maintained this information during the course of providing healthcare and pharmaceutical services to its Clients.

38. Upon information and belief, Defendant has not yet provided individual notice to the persons whose Private Information was compromised in the Data Breach. Consequently, most, if not all, Class Members remain unaware that their Private Information has been compromised and that they face a significant and continuing risk of identity theft, fraud, and other personal, financial, and privacy-related harms.

39. Defendant's delay in providing notice has deprived affected individuals of critical information concerning the Data Breach, including its root cause, the security vulnerabilities exploited by the cybercriminals, the duration and scope of the unauthorized access, and the measures Defendant has taken, if any, to remediate the vulnerabilities that enabled the Breach.

40. Defendant failed to implement and maintain reasonable and necessary safeguards sufficient to protect Plaintiff's and Class Members' Private Information against unauthorized access, acquisition, disclosure, and exploitation.

41. Defendant further failed to detect and prevent the unauthorized intrusion before cybercriminals were able to access and exfiltrate Private Information maintained within Defendant's systems.

42. Defendant also failed to timely notify Plaintiff and Class Members that their Private Information had been compromised. By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendant owed them a duty to reasonably safeguard that

information and protect it against unauthorized access and disclosure.

43. Plaintiff's and Class Members' Private Information was specifically targeted, accessed, and stolen by cybercriminals during the Data Breach. Defendant's inadequate security measures enabled the threat actors to infiltrate its systems and access and exfiltrate files containing Plaintiff's and Class Members' sensitive and inadequately protected Private Information.

44. Because Defendant undertook to collect, store, and protect Plaintiff's and Class Members' Private Information, Defendant knew or should have known, based on readily available information concerning cybersecurity threats, of the substantial risk that such information would be targeted, exfiltrated, and misused by unauthorized third parties. Defendant therefore had a duty to implement reasonable safeguards sufficient to secure the Private Information of its Clients' patients maintained within its systems and networks.

45. Defendant could and should have prevented or substantially mitigated the Data Breach by implementing reasonable security measures to protect the files, servers, and systems containing Plaintiff's and Class Members' Private Information, including appropriate encryption and access controls.

46. Reasonable and industry-standard cybersecurity measures—including network segmentation, encryption of sensitive information, appropriate access controls, and effective malware prevention and detection technologies—could have prevented, detected, or materially limited the unauthorized access to and exfiltration of Plaintiff's and Class Members' Private Information. Defendant failed to implement and maintain such adequate safeguards.

47. Upon information and belief, Plaintiff's and Class Members' Private Information has been, or may be, offered for sale, transferred, or otherwise disseminated on the dark web or through other illicit channels following the Data Breach, consistent with the methods by which

cybercriminals monetize information stolen through attacks of this nature.

48. In sum, Defendant failed to take reasonable and necessary precautions to safeguard Plaintiff's and Class Members' Private Information against unauthorized access, acquisition, disclosure, and exploitation.

49. Defendant's conduct demonstrates a substantial disregard for Plaintiff's and Class Members' privacy and property rights in their highly sensitive Private Information.

50. As a direct and proximate result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class Members have suffered harm and face a continuing and heightened risk of identity theft, fraud, and other misuse of their Private Information.

### C. *Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Commit Fraud.*

51. Private Information is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

52. Each year, identity theft causes billions of dollars of losses to victims in the United States alone.

53. For example, with the Private Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, obtain medical services, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.

54. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

55. Medical-related identity theft is one of the most common, most expensive, and most

difficult to prevent forms of identity theft. According to Kaiser Health News, "medical related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013[,]" which is more than identity thefts involving banking and finance, the government and the military, or education.[9]

56. "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place." A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[10]

57. When cybercriminals manage to steal health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Plaintiff and Class Members are exposed.

58. Social Security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains "This is the most dangerous type of personal information in the hands of identity thieves because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters."[11]

---

[9] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KFF Health News (Feb. 7, 2014), https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited Sept. 2, 2026).

[10] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX (May 14, 2015), https://www.idx.us/knowledge-center/you-got-itthey-want-it-criminals-are-targeting-your-private-healthcare-dat (last visited Sept. 2, 2026); PricewaterhouseCoopers, *Managing Cyber Risks in an Interconnected World: Key Findings from The Global State of Information Security Survey 2015* (Sept. 30, 2014), https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-globalstate-of-information-security-survey-2015.pdf (last visited Sept. 2, 2026).

[11] *Dark Web Monitoring: What You Should Know*, Consumer Fed'n of Am. (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Sept. 2, 2026).

59. PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.

60. The Data Breach at issue here was targeted and financially motivated, as the only reason cybercriminals go through the trouble of hacking entities like Defendant is to steal the highly sensitive information they maintain, which can be exploited and sold for use in the kinds of criminal activity described herein.

61. A Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.

62. On the black market, PHI is even more valuable than PII.

63. According to the Center for Internet Security, "[t]he average cost of a data breach incurred by a non-healthcare related agency, per stolen record, is $158. For healthcare agencies the cost is an average of $355. Credit card information and PII sell for $1-$2 on the black market, but PHI can sell for as much as $363 according to the Infosec Institute. This is because one's personal health history, including ailments, illnesses, surgeries, etc., can't be changed, unlike credit card information or Social Security numbers. [12]

64. "PHI is valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale."[13]

65. Identity theft experts advise victims of data breaches: "[I]f there is reason to believe

---

[12] *Data Breaches: In the Healthcare Sector*, Ctr. for Internet Sec., https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Sept. 2, 2026).

[13] *Id.*

that your personal information has been stolen, you should assume that it can end up for sale on the dark web." [14]

66. These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, they will use it.

67. Hackers may not use the information right away, but this does not mean it will not be used. "[S]tolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years". [15]

68. For instance, with a stolen Social Security number, which was information the Defendant possessed and maintained, criminals can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.

69. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

70. The unfortunate truth is the full scope of the harm has yet to be realized. There may be a time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is used.

71. Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendant's negligence.

72. Furthermore, identity monitoring services only alert someone to the fact that they

[14] *Dark Web Monitoring: What You Should Know*, Consumer Fed'n of Am. (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Sept. 2, 2026)

[15] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. Gov't Accountability Off. (July 5, 2007), https://www.gao.gov/products/gao-07-737 (last visited Sept. 2, 2026)

have already been the victim of identity theft—it does not prevent identity theft.

73. Neither can an identity monitoring service remove personal information from the dark web.

74. "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[16]

75. As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and placed at an imminent and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and medical records for unauthorized activity for years to come.

76. Even more serious is the identity restoration that Plaintiff and other Class Members must go through, which can require spending countless hours filing police reports, filling out IRS forms, completing Federal Trade Commission checklists and Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

77. Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

a. Actual identify theft

---

[16] *Dark Web Monitoring: What You Should Know*, Consumer Fed'n of Am. (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (last visited Sept. 2, 2026)

b. Trespass, damage to, and theft of their personal property, including their PII/PHI

c. Improper disclosure of their PII/PHI

d. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals

e. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information

f. Ascertainable losses in the form of time taken to respond to identity theft, including lost opportunities and lost wages from uncompensated time off from work

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach

h. Ascertainable losses in the form of diminution of the value of Plaintiff's and Class Members' Private Information, for which there is a well-established and quantifiable national and international market

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and/or

k. Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score

78. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further breaches through the implementation of industry standard security measures and safeguards. Defendant has shown itself wholly incapable of protecting Plaintiff's and Class Members' Private Information.

79. Plaintiff and Class Members also have an interest in ensuring that their Private Information is removed from all Defendant's servers, systems, and files.

80. Plaintiff and Class Members are desperately and continually trying to mitigate the damages Defendant caused them.

81. Given the kind of Private Information Defendant made accessible to hackers, however, Plaintiff and the Class are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.

82. None of this should have happened because the data breach was entirely preventable.

**D. *Defendant was Aware or Should Have Been Aware of the Risk of Cyberattacks.***

83. According to the Center for Internet Security, "the health industry experiences more data breaches than any other sector." This is because "Personal Health Information (PHI) is more valuable on the black market than credit card credentials or regular Personally Identifiable Information (PII). Therefore, there is a higher incentive for cyber criminals to target medical databases. They can sell the PHI and/or use it for their own personal gain." [17]

[17] *Data Breaches: In the Healthcare Sector*, Ctr. for Internet Sec., https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Sept. 2, 2026).

84. "In 2023, more than 540 organizations and 112 million individuals were implicated in healthcare data breaches reported to the HHS Office for Civil Rights (OCR), compared to 590 organizations and 48.6 million impacted individuals in 2022."[18]

85. "Healthcare organi[z]ations are rich targets for cybercriminals because they hold a large amount of sensitive patient data. This data can be used to commit identity theft or fraud or sold on the black market. Hackers can access this data in many ways, including phishing emails, malware, and unsecured networks." [19]

86. It is no secret that "[h]ealthcare data breaches are reaching record highs. Indeed, healthcare now sees more cyberattacks than any other industry. Fully one-third of all cyberattacks are aimed at healthcare institutions. Why? Because healthcare is a valuable and vulnerable target. Hospitals and healthcare institutions are a prime target for cybercrime due to the vast amount of sensitive data they hold."[20]

87. The health industry is frequently recognized as one of the most vulnerable industries for a cyberattack.

88. Defendant should have been aware, and indeed was aware, that it was at risk of a data breach that could expose the Private Information that it solicited, collected, stored, and maintained, especially given the rise of healthcare data breaches

[18] *This Year's Largest Healthcare Data Breaches*, HealthITSecurity (Dec. 26, 2023), https://healthitsecurity.com/features/this-years-largest-healthcare-data-breaches (last visited Sept. 2, 2026).
[19] Troy Beamer, *What Industries Are Most Vulnerable to Cyber Attacks in 2024?*, Tech Bus. News (Feb. 27, 2024), https://www.techbusinessnews.com.au/what-industries-are-mostvulnerable-to-cyberattacks-in-2022/ (last visited Sept. 2, 2026).
[20] *What Industries Are Most Vulnerable to Cyberattacks?*, PSM Partners, https://www.psmpartners.com/blog/most-targeted-industries-for-cyber-attacks/ (last visited Sept. 2, 2026)

89. Defendant was aware, or should have been aware, of the risks and harm that could result from inadequate data security.

90. Despite their assurances to its Clients regarding safeguarding PII and PHI, Defendant negligently failed to implement adequate security measures to safeguard the Private Information of Plaintiff and Class Members.

**E. *Defendant Failed to Comply with Industry Standards.***

91. Data breaches are preventable. "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]" [21]

92. Most reported data breaches "are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."[22]

93. Here, many failures laid the groundwork for the Data Breach.

94. The FTC has published guidelines that establish reasonable data security practices for businesses.

95. The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

---

[21] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, in *Data Breach and Encryption Handbook* (Lucy L. Thomson ed., 2012), available at https://lawcat.berkeley.edu/record/394088 (last visited Sept. 2, 2026).
[22] *Id.*

96. The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

97. The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

98. According to information and belief, Defendant failed to follow reasonable and necessary industry standards to prevent the Breach, including the FTC's guidelines.

99. Upon information and belief, Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in cybersecurity readiness.

100. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."

101. To prevent and detect the attack here, Defendant could and should have taken, as recommended by the Federal Bureau of Investigation, the following measures:

a. Implemented an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered

b. Enabled strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing

c. Scanned all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configured appropriate firewalls to block access to known malicious IP addresses

e. Patched operating systems, software, and firmware on devices. Consider using a centralized patch management system

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Managed the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configured access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares

i. Disabled macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications

j. Implemented Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

k. Considered disabling Remote Desktop protocol (RDP) if it is not being used

l. Used application whitelisting, which only allows systems to execute programs known and permitted by security policy

m. Executed operating system environments or specific programs in a virtualized environment

n. Categorized data based on organizational value and implement physical and logical separation of networks and data for different organizational units

102. According to information and belief, Defendant failed to do any of the above.

103. To prevent and detect ransomware attacks, Defendant could and should have recommended its employees, as recommended by the United States Cybersecurity & Infrastructure Security Agency, take the following measures:

a. Update and patched your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

b. Used caution with links and when entering website addresses. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

c. Open email attachments with caution. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

d. Keep your personal information safe. Check a website's security to ensure the information you submit is encrypted before you provide it.

e. Verify email senders. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

f. Inform yourself. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published

g. Used and maintain preventative software programs. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.

104. In addition to those measures, to prevent and detect the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures

a. Harden internet facing assets

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audits

b. Thoroughly investigate and remediate alerts

- Prioritize and treat commodity malware infections as potential full compromise of the system

c. Include IT professionals in security discussions.

- Ensure collaboration among security operations, security administrators, and information technology administrators to configure servers and other endpoints securely

d. Build and maintain credential hygiene

- Use multifactor authentication or network level authentication and enforce strong, randomized, just-in-time local administrator passwords

e. Apply the principal of least privilege

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

f. Harden infrastructure

- Utilize Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and Antimalware Scan Interface for Office Visual Basic for Applications

105. Given that Defendant was storing the Private Information of thousands of individuals, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks. However, Defendant failed to do so because an unknown third-party was able to gain access to Defendant's inadequately secured network and systems and exfiltrate the sensitive Private Information of Plaintiff and Class Members.

106. Specifically, among other failures, Defendant had far too much confidential unencrypted information held on its systems. Such Private Information should have been segregated into an encrypted system.

107. Moreover, it is well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed.

108. The FTC has repeatedly emphasized the importance of disposing of unnecessary Private Information: "Keep sensitive data in your system only as long as you have a business reason to have it. Once that business need is over, properly dispose of it. If it's not on your system, it can't be stolen by hackers." Rather than following this basic standard of care, Defendant kept thousands of current and former files of its Clients unencrypted Private Information on its inadequately secured systems indefinitely.

109. In sum, the Data Breach could have been easily prevented through standard practices like the use of industry standard network segmentation and encryption of all Private Information—which Defendant negligently failed to do.

110. Further, the scope of the Data Breach could have been dramatically reduced had Defendant utilized proper record retention and destruction practices—but Defendant negligently did no such thing.

**F. *Defendant Failed to Protect Private Information Under HIPAA and the Applicable Standards of Care.***

111. As a business handling medical patient data, Defendant is a covered entity under HIPAA (45 C.F.R. § 160.103). As such, Defendant is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

112. HIPAA's Privacy Rule establishes national standards for protecting health information, including health information that is kept or transferred in electronic form.

113. Defendant is required to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

114. "Electronic protected health information" is "individually identifiable health information . . . that is: (i) transmitted by electronic media; [or] (ii) maintained in electronic media[.]" 45 C.F.R. § 160.103.

115. The HIPAA Security Rule, 45 C.F.R. Part 164, Subpart C, requires Defendant to:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information it or any business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information; and

d. Ensure compliance by its workforce

116. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information[.]" 45 C.F.R. § 164.306(e).

117. Additionally, HIPAA requires Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights[.]" 45 C.F.R. § 164.312(a)(1).

118. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of [the] breach[.]" To date, upon information and belief, Defendant has not sent notice of the Breach to affected individuals.

119. Defendant was also prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce[.]" The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

120. Defendant was further required by various states' laws and regulations to protect Plaintiff's and Class Members' Private Information.

121. Defendant owed a duty to Plaintiff and the Class to design, maintain, and test their computer and email systems to ensure that the Private Information in its possession and control was adequately secured and protected.

122. Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and any others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

123. Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a breach of its data security systems in a timely manner.

124. Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

125. Defendant owed a duty to Plaintiff and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

126. Defendant owed a duty to Plaintiff and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in individuals' decisions to entrust Defendant with their Private Information

127. Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

128. Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

129. All in all, Defendant has failed to comply with FTC, HIPAA, and industry standard rules, regulations, and guidelines which allowed the ransomware group to gain access and exfiltrate Defendant's patient Private Information

130. Defendant knew or should have reasonably known of the foreseeable risks of harms to Plaintiff and Class Members in the event of a breach. Defendant's inadequate safeguards are the proximate cause of the Breach and harms to Plaintiff and Class Members.

**G. *Common Injuries and Damages.***

131. As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

**H. *Loss of Time to Mitigate the Risks of Fraud and Identity Theft***

132. As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

133. Due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm. Identity theft protection and credit monitoring services are reasonable and necessary for Plaintiff and Class Members to protect themselves against fraud and identity theft. Plaintiff and Class Members will have to pay for these services for the rest of their lives now that their Private Information has been accessed and exposed in Defendant's Breach.

134. Plaintiff and Class Members have spent time, and will spend additional time in the future, on a variety of prudent actions, such as placing freezes and alerts with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover

135. These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

136. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

**I. *Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary***

137. To date, Defendant has done nothing to provide Plaintiff and Class Members with relief for the damages they have suffered due to the Data Breach.

138. Given the type of targeted attack in this case and sophisticated criminal activity, the type of information involved, and the modus operandi of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes— e.g., opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or insurance; or filing false unemployment claims.

139. By accessing and obtaining the PII in the Breach, hackers have everything they need to commit fraud and identity theft.

140. Such fraud may go undetected until debt collection calls commence months, or even years later. An individual may not know that her or her information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

141. Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel their cards and request a replacement.

142. The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

143. Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

144. The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a

minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information

**J. *Plaintiff's Individual Experience***

Plaintiff Barbara Balderrama's Experience

145. Plaintiff Barbara Balderrama is a current customer of CVS Pharmacy and Walgreens Pharmacy, Clients of Defendant, and, upon information and belief, her Private Information was shared with or otherwise transmitted to Defendant in connection with the fulfillment and receipt of her prescription medications. Upon information and belief, Plaintiff Balderrama's Private Information was compromised in the Data Breach.

146. Plaintiff entrusted her Private Information to a Client of Defendant with the reasonable expectation and mutual understanding that any information shared by this Client, including to Defendant, would be secure from unauthorized access.

147. By soliciting and accepting Plaintiff 's Private Information, Defendant agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

148. Plaintiff would not have provided her Private Information to Defendant had she known it would be kept using inadequate data security and vulnerable to a cyberattack.

149. Upon information and belief, Defendant was in possession of Plaintiff 's Private Information before, during, and after the Data Breach.

150. As a result, Plaintiff was injured by Defendant's Data Breach.

151. In response to the Data Breach, upon information and belief, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and reviewing her credit reports. Plaintiff estimates she has already spent at least 1 hour responding to the Data Breach.

152. Plaintiff will be forced to spend additional time reviewing her credit reports and monitoring her accounts for the rest of her life. This is time spent which has been lost forever and cannot be recaptured.

153. Plaintiff places significant value in the security of her Private Information and does not readily disclose it. Plaintiff entrusted Defendant with her Private Information with the understanding that Defendant would keep her information secure and would employ reasonable and adequate data security measures to ensure that her Private Information would not be compromised.

154. Because of the Data Breach, there is no doubt Plaintiff's highly confidential Private Information is in the hands of cybercriminals. The modus operandi of cybercriminals is to steal data they can exploit by selling on the dark web. The cybercriminal group ShinyHunters has already posted on the dark web that they have stolen the Defendant's patient data and, as such, Plaintiff and the Class are at an imminent risk of identity theft and fraud.

155. Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

156. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, PII is a form of intangible property—property that Defendant was required to adequately protect and safeguard against unauthorized disclosure.

157. Due to Defendant's Breach, Plaintiff will be forced to spend money to cover the cost of future credit monitoring and identity-theft monitoring, given the type of data stolen in the Breach and the fact that, upon information and belief, her information has already been published on the dark web. The need for future monitoring is reasonable and necessary and is a consequence

of Defendant's breach of duty to maintain Plaintiff's highly sensitive Private Information, including her Social Security number, secure and protected against unauthorized disclosure.

158. Plaintiff's highly sensitive Private Information accessed in the Breach provides hackers with a clear ability to commit fraud.

159. Knowing that thieves intentionally targeted and accessed her Private Information, has caused Plaintiff great anxiety beyond mere worry.

160. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by Defendant's delay in notifying her of the fact that her Private Information was accessed and/or acquired by criminals as a result of the Data Breach.

161. Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

162. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (i) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (ii) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (iii) loss of the benefit of her bargain because Defendant did not adequately protect her Private Information; (iv) emotional distress because identity thieves now possess her Private Information; (v) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and published on the dark web; (vi) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff ; and (vii) other economic and non-economic harm.

163. Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. This risk is certainly real and

impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.

164. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff 's Private Information will be wholly unprotected and at-risk of future data breaches

## V. <u>CLASS ACTION ALLEGATIONS</u>

165. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

166. Specifically, Plaintiff proposes the following Class definition (referred to herein as the "Class"), subject to amendment as appropriate:

> **<u>Class</u>**
>
> All persons whose PII was accessed and/or compromised as a result of the Data Breach, including all persons that were sent a Notice Letter.

167. Excluded from the Class is Defendant and their parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

168. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

169. The Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

170. **<u>Numerosity</u>.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time,

based on information and belief, the Class consists of thousands of clients of Defendant whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

171. **Commonality.** Upon information and belief, there are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. When Defendant learned of the Data Breach;

c. Whether Defendant's response to the Data Breach was adequate;

d. Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

i. Whether Defendant breached their duty to Class Members to safeguard their Private Information;

j. Whether hackers obtained Class Members' Private Information via the Data Breach;

k. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l. Whether Defendant breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

o. Whether Defendant's conduct was negligent;

p. Whether Defendant's conduct was *per se* negligent;

q. Whether Defendant was unjustly enriched;

r. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

172. **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, upon information and belief was compromised in the Data Breach.

173. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

174. **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiff and Class Members in that, upon information and belief, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

175. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

176. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

177. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI. CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

178. Plaintiff restates and realleges the allegations stated in paragraphs 1–178 as if fully set forth herein.

179. Defendant solicited, collected, stored, and maintained the Private Information of Plaintiff and Class Members on inadequately secured computer systems and networks.

180. Upon accepting and storing Plaintiff's and Class Members' Private Information on its computer systems and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from unauthorized access and disclosure.

181. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information.

182. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

183. Defendant had full knowledge of the sensitivity of the Private Information in its possession and the types of harm that Plaintiff and Class Members could and would suffer if the

Private Information was wrongfully accessed or disclosed. Plaintiff and Class Members were therefore the foreseeable victims of any inadequate data security practices.

184. Defendant's duty to implement and maintain reasonable data security practices arose as a result of the special relationship that exists between Defendant and consumers, which is recognized by laws and regulations, including, but not limited to, the FTC Act and common law.

185. Defendant was in a superior position to ensure its data security practices were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

186. Defendant knew Plaintiff and Class Members relied on it to protect their Private Information. Plaintiff and Class Members were not in a position to assess the data security practices used by Defendant. Because they had no means to identify Defendant's security deficiencies, Plaintiff and Class Members had no opportunity to safeguard their Private Information from cybercriminals. Defendant exercised control over the Private Information stored on its systems and networks; accordingly, Defendant was best positioned and most capable of preventing the harms caused by the Data Breach.

187. Defendant was aware, or should have been aware, of the fact that cybercriminals routinely target entities storing PII through cyberattacks in an attempt to steal valuable Private Information. In other words, Defendant knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

188. Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard or

delete such data and providing notification to Plaintiff and Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

189. Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to such risk, or defeats protections put in place to guard against that risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

190. Defendant had a duty to implement and maintain reasonable data security practices pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect sensitive and confidential data.

191. The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

192. Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information as part of their regular business, which affects commerce.

193. Defendant violated the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein.

194. Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to implement and maintain fair, reasonable, and adequate data security practices to

safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay

195. Defendant's multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

196. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

197. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, like Defendant, that fail to employ reasonable data security measures and avoid unfair and deceptive practices, causing the same harm as that suffered by Plaintiff and the Class.

198. Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

199. Defendant's violations of the FTC Act constitute negligence *per se*.

200. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information.

201. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate data security measures to safeguard Plaintiff's and Class Members' Private Information

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to ensure its email systems had plans in place to maintain reasonable data security safeguards;

d. Failing to implement and maintain adequate mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

f. Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised; and

g. Failing to timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate the potential for identity theft and other damages.

202. Defendant's willful failure to abide by its duties to Plaintiff and Class Members was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

203. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.

204. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

205. As a direct and proximate result of Defendant's negligent conduct, including, but not limited to, its failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

206. Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately

protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

207. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigate the impact of the Data Breach.

208. Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach. Yet, Defendant delayed in noticing Plaintiff and Class Members of the Breach.

209. Plaintiff and Class Members could have enrolled in credit monitoring, instituted credit freezes, and changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

210. Plaintiff and Class Members suffered harm from Defendant's delay in notifying them of the Data Breach.

211. As a direct and proximate result of Defendant's conduct, including, but not limited to, Defendant's failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future

consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

212. The damages Plaintiff and the Class have suffered and will suffer (as alleged above) were and are the direct and proximate result of Defendant's negligent conduct.

213. Plaintiff and the Class have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

214. Plaintiff restates and realleges the allegations stated in paragraphs 1–178 as if fully set forth herein.

215. Defendant solicited and obtained the Private Information of Plaintiff and Class Members in connection with its pharmaceutical distribution and related healthcare services and thereafter collected, stored, maintained, and used such information in the ordinary course of its business.

216. Upon information and belief, Defendant entered into contracts, written or implied, with its Clients that contracted with Defendant in connection with the services Defendant provides.

Upon information and belief, these contracts are virtually identical between and among Defendant and its Clients around the country.

217. In exchange, Defendant agreed, in part, to safeguard and protect Plaintiff's and Class Members Private Information from unauthorized disclosures.

218. These contracts were made for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were intended third-party beneficiaries of the contracts entered into between Defendant and its Clients. Defendant knew that if it were to breach these contracts with its Clients, Plaintiff and Class Members would be harmed.

219. Defendant breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure to third parties, (iii) safeguarding Plaintiff's and Class Members' Private Information from unauthorized disclosure; and (iv) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

220. Plaintiff and the Class were harmed by Defendant's breach of its contracts with its Clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

221. Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

222. Plaintiff and the Class Members are also entitled to their costs and attorneys' fees incurred in this action

**COUNT III**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

223. Plaintiff restates and realleges the allegations stated in paragraphs 1–178 as if fully set forth herein.

224. This Count is pleaded in the alternative to Count II above.

225. Plaintiff and Class Members conferred a benefit on Defendant by indirectly providing their valuable Private Information to Defendant. Defendant accepted and appreciated that benefit.

226. By conferring their Private Information to Defendant, Plaintiff and Class Members reasonably understood Defendant would be responsible for securing their Private Information from unauthorized access and disclosure.

227. Upon information and belief, Defendant funds its data security measures entirely from their general revenue, including from money it makes based on protecting Plaintiff's and Class Members' Private Information.

228. Plaintiff and Class Members paid Defendant, directly or indirectly, a certain sum of money, which was used to fund data security via contracts with Defendant.

229. As such, a portion of the payments made by or on behalf of Plaintiff and the Class was to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

230. Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

231. Protecting the Private Information of Plaintiff and Class Members is integral to Defendant's business. Without their Private Information, Defendant would be unable to provide services comprising Defendant's core business.

232. Plaintiff's and Class Members' Private Information have monetary value.

233. Plaintiff and Class Members directly conferred a monetary benefit on Defendant by supplying their Private Information, from which Defendant derives its business, and which should have been protected with adequate data security.

234. Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information, and as such, Defendant had direct knowledge of the monetary benefits conferred upon it by Plaintiff and the Class. Defendant profited from these transactions and used Plaintiff's and Class Members' Private Information for business purposes.

235. Indeed, Plaintiff and Class Members who were current and former patients of Clients of Defendant provided monetary payment, directly or indirectly, to Defendant and therefore conferred a benefit unto Defendant.

236. Defendant appreciated that a monetary benefit was being conferred upon them by Plaintiff and Class Members and accepted that monetary benefit.

237. Under the facts and circumstances outlined above, however, it is inequitable for Defendant to retain that benefit without payment of the value thereof.

238. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

239. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits to the detriment of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class

Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

240. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

241. Defendant acquired Plaintiff's and Class Members' Private Information through inequitable means in that they failed to disclose their inadequate data security practices, as previously alleged.

242. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have allowed Defendant to collect their Private Information.

243. Plaintiff and Class Members have no adequate remedy at law.

244. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including, but not limited to: (i) actual identity theft and fraud; (ii) loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (v) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, effort and time spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and/or (vii) future costs in terms of time, effort, and money that will be expended to

prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

245. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

246. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, all gains that it unjustly received.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

247. Plaintiff restates and realleges the allegations stated in paragraphs 1–178 as if fully set forth herein.

248. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the statutes and regulations described in this Complaint.

249. Defendant owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

250. Defendant still possesses Private Information regarding Plaintiff and Class Members.

251. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of their Private Information will occur in the future.

252. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure their patients/customers Private Information and to timely notify employees of a data breach under the common law and Section 5 of the FTCA;

b. Defendant's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect patients/customers Private Information; and

c. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure patients/customers Private Information.

253. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect Class Members' Private Information, including the following:

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

- engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

- engaging third-party security auditors and internal personnel to run automated security monitoring;
- auditing, testing, and training its security personnel regarding any new or modified procedures;
- segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;
- conducting regular database scanning and security checks;
- routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and
- meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps Defendant's employees should take to protect themselves.

254. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach from Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

255. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such

measures.

256. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus preventing future injury to Plaintiff and other Class Members whose Private Information would be further compromised.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: September 3, 2026

Respectfully submitted,

*/s/ Bruce W. Steckler*
Bruce W. Steckler
Texas Bar I.D. 00785039
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com

Philip K. Krzeski *
Evan D. Robert *
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S Unit 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
E: pkrzeski@chestnutcambronne.com
E: erobert@chestnutcambronne.com

* *Pro Hac Vice* Forthcoming

***Attorneys for Plaintiff and the Putative Class***